FILED
SEP 26 2014
CLERK

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTHERN DAKOTA**

**Southern DIVISION**

| | |
|---|---|
| **DEBRA JENNER,**<br><br>Plaintiff,<br><br>vs.<br><br>**KAY NIKOLAS, KEITH BONENBERGER, DON HOLLOWAY, KEN ALBERS, DAVE NELSON, MARK SMITH, KEVIN KRULL & PATRICIA WHITE HORSE-CARDA,**<br><br>Defendants. | File No. 14-CV-4147<br><br>**COMPLAINT** |

State of South Dakota )
) SS
County of Hughes )

Debra Jenner, being first duly sworn on her oath deposes and states:

1. I am the Plaintiff in the above captioned matter and I have personal knowledge of the facts alleged in this Complaint except those facts stated on my information and belief.

2. I verily believe the allegations in this Complaint stated on my information and belief is true.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, 28 U.S.C. 1343 and 28 U.S.C. § 1367.

4. Venue lies in this District pursuant to 28 U.S.C. § 1391(b).

5. Kay Nikolas, Keith Bonenberger, Don Holloway, Ken Albers, Dave Nelson, Mark Smith, Kevin Krull, Greg Erlandson and Patricia White Horse Carda are members of the South Dakota Board of Pardons and Paroles.

6. During my September 8, 2014, parole hearing, my lawyer asked the members present to have Mr. Erlandson recuse himself from the proceedings as Mr. Erlandson's law firm employs my lawyer. Therefore, I have not named Mr. Erlandson as a party to this action.

7. Defendants are sued in their personal capacity as well as under the doctrine of *Ex Parte Young*.

8. South Dakota law commands the executive director of the Board of Pardons and Paroles to "generate an adequate case history of each inmate of the state penitentiary to enable the executive director to make recommendations to the Board of Pardons and Paroles." SDCL § 24-15-1.

9. The file and case history is created "solely for the proper supervision of the inmate by the Department of Corrections and as a guide to the inmate's needs." SDCL § 24-15-1.

10. I was convicted of second degree murder in March 1988 for death of my three-year old daughter, Abby, in Huron, South Dakota.

11. I was initially sentenced to life in prison without parole.

12. Governor William Janklow commuted my sentence to a term of 100 years in prison in December 2002.

13. I am informed and thereby believe James Sheridan, a board member and Beadle County deputy sheriff who investigated my crime, recused himself from participating in the commutation decision.

14. Governor Janklow's exercise of his power of executive clemency made me immediately eligible for parole.

15. I am informed, and thereby believe, that until March 21, 2014, my file contained a large manila envelope with a post mark of January 27, 2003, from Sheridan to another board member.

16. I am informed and thereby believe that envelope contained 26 photographs of my daughter, Abby.

17. I am informed and thereby believe some of the photographs in that file were in color and appeared to be from the crime scene, while other photographs appeared to have been from Abby's autopsy.

18. I am informed and thereby believe many of the photographs have writing on them suggesting that they were taken as a part of the criminal investigation or autopsy.

19. I am informed and thereby believe all of the photographs were chilling and graphic.

20. I am informed and thereby believe the file contained no written record of any request for the photographs from the executive secretary of the parole board, or any member of the board.

21. I am informed and thereby believe there is no release of the photographs from the circuit court, the Beadle County Sherriff's office, the Department of Criminal Investigation, or the South Dakota Attorney General.

22. Even though the United States Supreme Court has noted that a "well-established cultural tradition acknowledging a family's control over the body and death images of the deceased has long been recognized at common law." *National Archives and Records Admin. v. Favish,* 541 U.S. 157, 168, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004), I am informed, and thereby believe, the

Board did not obtain a release from any one in my family about this use of Abby's photographs.

23. My first parole hearing took place on Tuesday, February 18, 2003, before a two-member panel of the board.

24. At that hearing, Chief Deputy Attorney General Mark Barnett referred the board to pictures of Abby to ponder in its deliberations.[1]

25. My case was brought before the full parole board on February 21, 2003.

26. I am informed and thereby believe Mr. Sheridan again recused himself from consideration of my case that same day.

27. I am informed and thereby believe the pictures were made available to every member of the board during the full board's consideration of my request for parole for the express purpose that my application be denied.

28. I am informed and thereby believe the minutes of the February 2003 full board meeting contain no reference whatsoever to the photographs or how the photographs came to be a part of my file.

29. An internet resource reported that "[m]embers also talked about pictures they had seen of Abby Jenner's body after she had been stabbed 70 times."[2]

30. One member of the board reportedly stated "[i]t absolutely turned my stomach" and "I can't begin to comprehend something like that."[3]

---

[1] http://www.prodeathpenalty.com.lwop.htm last viewed June 25, 2013.
[2] Ibid.
[3] Ibid.

31. After viewing the pictures the board voted 7-0 to deny parole. One member was absent, and another member did not participate because he helped to investigate my crime.[4]

32. Since that time I have appeared before the board on several occasions. Because I am "old system" inmate, I am entitled to a parole hearing every eight months.

33. During those hearings, the State frequently referred to the photographs in my file. For example, when I appeared before a two-person panel of the board on December 20, 2005, news sources reported that "Mark Barnett, chief deputy attorney general, told the parole officials Tuesday that Jenner-Tyler should remain locked up. He urged then, as he has in the past, to look again at the grizzly photos of the woman's mutilated daughter."[5]

34. Barnett reportedly said "[t]he old adage, a picture is worth a thousand words, could not apply in any other case like it does in this one."[6]

35. I am informed and thereby believe my file demonstrates that the source of those photographs is the same parole board member who time and again recused himself from participating in the hearings because of his role in the investigation of my crime.

36. The former member of the Board of Pardons and Paroles has done by indirection that which he could not do directly – argued against my release on parole after twice recusing himself from participating in matters related to me.

---

[4] Ibid.

[5] http://siouxcityjournal.com/news/state-and-regional/murdering-mom-asks-for-parole-again last viewed June 25, 2013.

[6] Ibid.

37. If former Deputy Attorney General Barnett is right about that old adage, then the board member who had recused himself before and after he salted my file with illicit photographs has spoken volumes on a subject on which he had he an admitted conflict of interest and on which he purported surrendered his right to speak.

38. My lawyer filed a motion and brief with the Board on November 15, 2014, asking that the photographs be removed from my file. Copies of the motion and brief are attached as Exhibits A and B.

39. As shown by Exhibit C the board denied my request to have the photographs removed from my file during the December 2014 full board meeting.

40. I am informed and thereby believe my lawyer filed proposed Findings of Fact, Conclusions of Law and a proposed Order after being advised of the Board's action. Copies of the proposed documents are attached as Exhibits D and E.

41. The board took no action on the proposed Findings of Fact, Conclusions of Law and proposed Order.

42. The taint created by the photographs and the board member's conduct is not limited by the former board member's term on the board, but continues so long as board members who had access to the photographs continue to hear my application for parole.

43. On January 13, 2014, my lawyer requested that each member of Board recuse himself or herself from my parole hearing. A copy of that request is attached as Exhibit F.

44. On January 14, 2014, I appeared before a two member panel of the Board and my lawyer orally asked the members present to recuse themselves from my hearing. The request was denied.

45. On February 20, 2014, my lawyer filed an Application for Ex Parte Alternative Writ of Mandamus, or in the Alternative, Certiorari and affidavit with the South Dakota Supreme Court seeking review of the board's decision to deny my motion to have the unauthorized photographs removed from my file. Copies of the Application and Affidavit are attached as Exhibits G and H.

46. On March 14, 2014, by a vote of 3 to 2, the South Dakota Supreme Court denied my Petition for Writ of Mandamus. A copy of the Order is attached as Exhibit I.

47. On March 21, 2014, the Executive Director of the Board of Pardons and Paroles removed the photographs of which I had complained and executed an affidavit "as a historical document intended to clarify the status of photographic material" in my file. A copy of Mr. Ligtenberg's affidavit is attached as Exhibit J.

48. As early as 1983 the Eighth Circuit Court of Appeals recognized the right of a South Dakota inmate to have his or her application for parole heard by a fair and impartial board. *Flitte v. Erickson,* 724 F.2d 80, 82 (8th Cir. 1983). Defendants have violated my right to such a hearing and continue to do so.

49. The presence of the illicit crime scene and autopsy photographs in my file deprived me of my right to have my request for parole heard by an unbiased and impartial board.

50. The dispute over the unauthorized crime scene and autopsy photographs is symptomatic of larger issue of constitutional dimension: The South Dakota Board of Pardons and Paroles has no effective conflicts of interest policy to vindicate the constitutional right to a fair and impartial hearing recognized in *Flitte v. Erickson*.

51. I am informed and thereby believe that prosecuting attorneys and members of law enforcement agencies on the Board continue to participate in matters which arose within their jurisdictions.

52. I am informed and thereby belief that such officials may ask permission of the inmate at the beginning of a hearing to participate in a matter that had been prosecuted or investigated by the board member or members of his or her staff.

53. Consent obtained under such inherently coercive conditions is not voluntary.

54. My right to a hearing before a fair and impartial board is violated when board members who have had access to the illicit crime scene and autopsy photographs continue to hear my application for parole.

Wherefore, Plaintiff prays for the following relief:

A. Injunctive relief, including a preliminary injunction commanding Defendants adopt an effective conflict of interest policy to vindicate Plaintiff's right to a hearing before fair and impartial board;

B. An award of compensatory damages for violation of Plaintiff's right to a hearing before a fair and impartial board;

C. An award of attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law;

D. Pre- and post judgment interest at the statutory rate; and

E. Such other and further relief as the Court deems just and proper.

Further your affiant sayeth naught.

Dated this 25 day of September, 2014.

Debra Jenner
Debra Jenner

Subscribed and sworn to before me this 25 day of September, 2014.

MARK F. MARSHALL
NOTARY PUBLIC
SOUTH DAKOTA
SEAL SEAL

Mark F. Marshall
NOTARY PUBLIC

My Commission Expires: 3/29/2019

BANGS, McCULLEN, BUTLER,
FOYE & SIMMONS, L.L.P.

By: Mark F Marshall
Mark F. Marshall
Attorneys for Plaintiff
333 West Boulevard, Suite 400
P.O. Box 2670
Rapid City, SD 57709-2670
(605) 343-1040
mmarshall@bangsmccullen.com