UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DEBRA JENNER,<br><br>     Plaintiff,<br><br>  vs.<br><br>KAY NIKOLAS, KEITH BONENBERGER, DON HOLLOWAY, KEN ALBERS, DAVE NELSON, MARK SMITH, KEVIN KRULL, PATRICIA WHITE HORSE-CARDA, and JAMES SHERIDAN,<br><br>     Defendants. | 4:14-CV-04147-KES<br><br><br>ORDER GRANTING<br>MOTION TO DISMISS |

Plaintiff, Debra Jenner, filed this lawsuit pursuant to 42 U.S.C. § 1983. Defendants Kay Nikolas, Keith Bonenberger, Don Holloway, Ken Albers, Dave Nelson, Mark Smith, Kevin Krull, and Patricia White Horse-Carda are current members of the South Dakota Board of Pardons and Paroles. Defendant James Sheridan is a former member of the board. Jenner also moves for a preliminary injunction directing defendants to develop and implement an effective conflicts of interest policy. Docket 15. In response, defendants move to dismiss the action for failure to state a claim. For the following reasons, defendants' motion to dismiss is granted.

**FACTUAL BACKGROUND**

Jenner was convicted of second-degree murder in 1988 for the death of her three-year-old daughter Abby. Docket 14 at 2. Jenner was initially sentenced to life in prison without parole. *Id.* at 3. In 2002, Governor William

Janklow commuted Jenner's sentence to a term of 100 years in prison, making Jenner eligible for parole. *Id.* James Sheridan, then a member of the South Dakota Board of Pardons and Paroles, recused himself from participating in the commutation decision because he had taken part in Jenner's criminal investigation. *Id.* Jenner appeared before the full parole board in February 2003 for a parole hearing. *Id.* at 4. Sheridan again recused himself from consideration of her case. *Id.* The board considered Jenner's file, which contained approximately 26 photographs of Abby's body, and voted to deny parole. *Id.* at 5. Since then, Jenner has appeared before the board several times and has been denied parole on each occasion. Jenner has additionally sought to have the board remove the photographs from her file. Docket 14-1, 14-5, 14-6, 14-9.

On February 20, 2014, Jenner filed an Application for Ex Parte Writ of Mandamus with the South Dakota Supreme Court seeking review of the Board of Pardons and Parole's decision to deny Jenner's motion to have the unauthorized photographs removed from her file. Jenner's petition was denied on March 14, 2014.

On March 21, 2014, Ed Ligtenberg, the executive director of the parole board, executed an affidavit declaring that he removed all photographs received before January 14, 2014, from Jenner's file. Docket 14-11. Ligtenberg stated that he "personally removed all photos from Debra Jenner's file with the exception of photos [he] received from the South Dakota Attorney General . . . pursuant to SDCL 24-15-1 and -2." *Id.* at 1. Ligtenberg further stated that "the

photos contained in Debra Jenner's file were properly included therein," that he "requested that [the Attorney General] provide the Board of Pardons and Paroles with 6 to 12 photo's [sic] from the Attorney General's file to replace the photos [Ligtenberg] removed to aid the board as contemplated in SDCL 24-13-7," and "[t]he photos received from the Attorney General on January 14, 2014 are available to aid Board members who wish to consider the nature and circumstances of Jenner's offense in determining to grant or deny parole . . . ." *Id.* at 1-2.

On September 26, 2014, Jenner filed a complaint with this court. Jenner alleges in her amended complaint, submitted on October 23, 2014, that the photographs of Abby deprived her of her right to have her request for parole heard by an unbiased and impartial board. Docket 14 at 8. Jenner claims that Sheridan submitted the photographs in an effort to ensure that Jenner would not be granted parole, and that Sheridan's actions demonstrate that the board does not follow an effective conflicts of interest policy. *Id.* at 3, 6, 8. She alleges that Sheridan "has done by indirection that which he could not do directly – argued against [Jenner's] release on parole after twice recusing himself from participating in matters related to [Jenner]." *Id.* at 6.  Defendants move to dismiss the amended complaint alleging that it fails to state a claim.

## LEGAL STANDARD

Rule 12(b)(6) provides for dismissal of a claim if the claimant has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *United States v. Harvey*, No. Civ. 13-4023, 2014 WL 2455533, at *1 (D.S.D. Jun. 2,

3

2014). When reviewing a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the claim and draws all reasonable inferences in favor of the claimant. *See Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court determines plausibility by considering only the materials in the pleadings and exhibits attached to the complaint, drawing on experience and common sense and viewing plaintiff's claim as a whole. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)).

## DISCUSSION

"[T]o state a claim for relief under § 1983, a plaintiff must allege sufficient facts to show '(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right.' " *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (quoting *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009)). "[Section] 1983 demands more than a simple claim that the [defendants] engaged in wrongful conduct and the [plaintiff was] deprived of

constitutional rights. Indeed, to state a cause of action under § 1983, a plaintiff must plead facts that would tend to establish that the defendant's wrongful conduct *caused* the constitutional deprivation." *Zutz*, 601 F.3d at 851 (emphasis in original).

First, Jenner must show that defendants acted under color of state law. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 50. Here, defendants engaged in the alleged conduct while acting as members of the parole board. Jenner specifically claims that Sheridan placed photographs in her parole file while he was a member of the board, and the board members reviewed those photographs when deciding to deny parole. Accordingly, Jenner has sufficiently alleged that defendants acted under color of state law in their official capacity as members of the parole board when reviewing her file and choosing to deny parole.

Second, Jenner must establish that she was deprived of a protected liberty interest in order to prevail on her § 1983 due process claim. *Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472, 487 (1995)). "Protected liberty interests may arise from two

5

sources—the Due Process Clause itself and the laws of the States." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (quotation omitted). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence . . . . [T]he conviction, with all its procedural safeguards, has extinguished that liberty right[.]" *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). The Eighth Circuit has recognized, however, that " 'a state may create such a liberty interest when its statutes or regulations place substantive limitations on the exercise of official discretion or are phrased in mandatory terms.' " *Nolan v. Thompson*, 521 F.3d 983, 989 (8th Cir. 2008) (quoting *Mahfouz v. Lockhart*, 826 F.2d 791, 792 (8th Cir. 1987); *see Greenholtz*, 442 U.S. at 11 (finding that Nebraska statute created liberty interest where language mandated that parole board "*shall*" release inmate "*unless*" one of four criteria is met and board believes release should be deferred) (emphasis added); *Dace v. Mickelson*, 816 F.2d 1277, 1280 (8th Cir. 1987) ("[F]or a state to create a protectable liberty interest the statute or regulation must *require* release upon the satisfaction of the substantive criteria listed." (citation omitted) (emphasis in original)).

When a state creates such a liberty interest, "the Due Process clause requires fair procedures for its vindication – and federal courts will review the application of those constitutionally required procedures." *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011). "In the context of parole, [the Supreme Court] ha[s] held that the procedures required are minimal." *Id.* (holding that plaintiffs were afforded adequate due process where they were allowed to speak at their parole

6

hearings, contest evidence against them, access records in advance, and were notified of reasons why parole was denied); *see Greenholtz*, 442 U.S. at 16 (holding that prisoner received adequate process in parole hearing when he was allowed an opportunity to be heard and was informed of reasons why parole was denied); *Dace*, 816 F.2d at 1279 (noting that "minimal due process standards" apply when a state creates a liberty interest in parole).

Jenner acknowledges that she has no right to parole. Docket 16 at 1. Because Jenner's crime was committed before July 1, 1996, she is an "old system" inmate. " 'Old system' inmates have no right to be paroled." *Castaneira v. Ligtenberg*, No. CIV. 03-4167, 2006 WL 571985, at *3 (D.S.D. Mar. 7, 2006). Instead, Jenner contends that she is entitled to a parole hearing before an unbiased and impartial board. Docket 16 at 8. When Jenner became eligible for parole in 2002, the relevant parole statute provided:

> When an inmate becomes eligible for consideration for parole, the inmate shall be called before the Board of Pardons and Paroles to personally present the inmate's application for parole. . . . The board may issue an order to the Department of Corrections that the inmate shall be paroled if it is satisfied that:
>
> (1) The inmate has been confined in the penitentiary for a sufficient length of time to accomplish the inmate's rehabilitation;
>
> (2) The inmate will be paroled under the supervision and restrictions provided by law for parolees, without danger to society; and
>
> (3) The inmate has secured suitable employment or beneficial occupation of the inmate's time likely to continue until the end of the period of the inmate's parole in some suitable place within or without the state where the inmate will be free from criminal influences.

7

SDCL 24-15-8 (2002). "It should be clear that [SDCL 24-15-8] does not create a protected liberty interest in parole. By establishing that the board 'may' issue an order to the [Department of Corrections] that the inmate is to be paroled, the statute makes the release of the inmate purely discretionary. Thus, the statute fails to meet the essential mandatory language element of *Greenholtz* and *Parker*." *Dace*, 816 F.2d at 1281. While mandatory portions of the South Dakota parole regulations provide for a hearing, consideration of the inmate's history, and consideration of treatment possibilities and plans for the inmate, "these mandates are directed toward the factors the board must take into consideration, and do not mandate the inmate's ultimate release." *Id.* at 1282. "Even if the mandatory criteria are satisfied, the parole board maintains the ultimate discretionary authority to grant or deny the parole release." *Id.* Thus, South Dakota's regulations create no protectable liberty interest in parole. *Id.*

      The Eighth Circuit Court of Appeals has established that inmates cannot bring due process claims if there is no protected liberty interest in being granted parole. *See, e.g., McCall v. Delo*, 41 F.3d 1219, 1221 (8th Cir. 1994) (holding that parole board's revocation of inmate's presumptive parole date without notice or hearing did not violate Due Process Clause because Missouri statute created no protected liberty interest in parole); *Patten v. N.D. Parole Bd.*, 783 F.2d 140, 143 (8th Cir. 1986) (holding that North Dakota parole scheme created no liberty interest, and therefore prisoner had no right to due process where prison officials denied parole based on erroneous information). The Eighth Circuit, however, has not resolved the specific issue presented in this

8

case: Jenner acknowledges that she has no right to parole, but instead contends that she has a protected right to a fair parole hearing. Docket 16 at 8.

The Court of Appeals for the District of Columbia addressed a claim similar to Jenner's in *Brandon v. District of Columbia Board of Parole*, 823 F.2d 644 (D.C. Cir. 1987). There, the inmate acknowledged that he had no protected liberty interest in parole, but maintained instead that he had a constitutionally protected interest in having the board adhere to its own procedures for parole consideration. *Id.* at 647. The inmate argued "[f]or a hearing to be meaningful . . . there must exist the possibility that []parole can be granted." *Id.* Quoting the Supreme Court's decision in *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983), the *Brandon* court stated "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Brandon*, 823 F.2d at 648. "[T]he mere fact that the government has established certain procedures does not mean that the procedures thereby become substantive liberty interests entitled to federal constitutional protection under the Due Process Clause." *Id.* (citing *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 58 (2d Cir. 1985); *Velasco-Gutierrez v. Crossland*, 732 F.2d 792, 798 (10th Cir. 1984); *Harris v. McDonald*, 737 F.2d 662, 665 (7th Cir. 1984)). The *Brandon* court concluded that "even if the Board failed to comply with its regulations with regard to the conduct of [the inmate's] reparole hearings . . . that failure did not violate [the inmate's] federal constitutional right to due process of law." *Brandon*, 823 F.2d at 649.

Other circuits have likewise held that the procedures adopted by a state to guide parole release determinations are not themselves liberty interests entitled to due process protection. The Seventh Circuit noted that to suggest otherwise ignores a "fundamental logical flaw":

> If a right to a hearing is a liberty interest, and if due process accords the right to a hearing, then one has interpreted the Fourteenth Amendment to mean that the state may not deprive a person of a hearing without providing him with a hearing. *Reductio ad absurdum.*

*Procopio v. Johnson*, 994 F.2d 325, 332 (7th Cir. 1993) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1101 (7th Cir. 1982)); *see, e.g.*, *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997) ("It is . . . axiomatic that because Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds."); *Hill v. Jackson*, 64 F.3d 163, 171 (4th Cir. 1995) (citing *Brandon* and holding "[b]ecause the inmates' 'right' to annual parole review here is a procedural function of Virginia's parole scheme rather than a substantive right unto itself, the Constitution does not afford that 'right' any protection under the Due Process Clause."); *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995) (holding that the procedures that a state parole board employ to make parole decisions are generally not required to comport with constitutional standards of fundamental fairness, "[u]nless there is a liberty interest in parole . . .").

Jenner relies on *Morrissey v. Brewer*, 408 U.S. 471 (1972), where the Supreme Court held that a "neutral and detached hearing body such as a

traditional parole board" is among the "minimum requirements of due process" for parole revocation hearings. *Id.* at 488-89 (quotations omitted); Docket 23 at 4.[1] In *Morrissey*, the Supreme Court specified that "the liberty of a *parolee*, although indeterminate, includes many of the core values of unqualified liberty and its termination . . . calls for some orderly process, however informal." *Id.* at 482 (emphasis added); *see United States v. Redd*, 318 F.3d 778, 783 (8th Cir. 2003) (holding that, unlike inmates in parole hearings, "*parolees* enjoy due process and statutory protections in the context of their revocation hearings." (emphasis added)). Unlike the parolees in *Morrissey*, however, Jenner has not been released on parole and has no comparable liberty interest. "There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Greenholtz*, 442 U.S. at 9. "The parole-release decision . . . is more subtle and depends upon an amalgam of elements . . . many of which are purely subjective appraisals by the

---

[1] Jenner additionally cites a pre-*Greenholtz* case from Rhode Island, *State v. Ouimette*, 117 R.I. 361 (R.I. 1976), in support of her position. Docket 16 at 8. "To the extent that *Ouimette* relies on a liberty interest in parole release under the federal Constitution, that argument has been foreclosed by the Supreme Court's decision in *Greenholtz*." *Nolan*, 521 F.3d at 989. Thus, even if *Ouimette* was binding precedent on this court, its analysis would not apply.

Jenner also references *Daily v. City of Sioux Falls*, 802 N.W.2d 905 (S.D. 2011). The *Daily* court held that "[t]o establish a procedural due process violation, an individual must demonstrate that he has a protected property or liberty interest at stake and that he was deprived of that interest without due process of law." *Id.* at 911 (finding that City's administrative appeals process deprived plaintiff of protected property interest without due process because City was not held to its burden of proof in issuing zoning citations). Therefore, the *Daily* analysis does not apply because Jenner has no protected liberty interest at stake.

Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release." *Id.* at 9-10. "That the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained. To that extent the general interest asserted here is no more substantial than the inmate's hope that he will not be transferred to another prison, a hope which is not protected by due process." *Id.* at 11 (citations omitted) (emphasis in original). Thus, *Morrissey* does not mandate any minimum requirements of due process for Jenner's hearing. Without alleging the violation of a protected liberty interest, Jenner has failed to state a claim for relief.

## CONCLUSION

The procedures adopted by South Dakota to guide parole release determinations are not themselves liberty interests entitled to due process protection. Because Jenner has no constitutionally protected liberty interest in parole, defendants' conduct has not deprived her of any due process right. Therefore, Jenner fails to state a claim under 42 U.S.C. § 1983. Accordingly, it is

ORDERED that defendants' motion to dismiss (Docket 19) pursuant to Fed. R. Civ. P. 12(b)(6) is granted.

IT IS FURTHER ORDERED that plaintiff's motion for preliminary injunctive relief (Docket 15) is denied as moot.

Dated July 29, 2015.

          BY THE COURT:

          /s/ *Karen E. Schreier*
          KAREN E. SCHREIER
          UNITED STATES DISTRICT JUDGE